FRANKLIN SUGAR REFINING CO. v. UNITED STATES.

(Circuit Court, E. D. Pennsylvania.   March 22, 1907.)

No. 63 (1,809).

1. CUSTOMS DUTIES—ESTOPPEL—DELAY OF CUSTOMS OFFICERS.

There was a delay of several years by customs officers in forwarding an importer's protests to the Board of General Appraisers for decision, and during this period the value of the importer's evidence became impaired. *Held,* that no right against the government arose by reason of this delay, particularly when not intentional or negligent.

2. SAME—CLASSIFICATION—SUGAR ABOVE No. 16 DUTCH STANDARD—BEET SUGAR.

In construing Tariff Act July 24, 1897, c. 11, § 1, Schedule E, par. 209, 30 Stat. 168 [U. S. Comp. St. 1901, p. 1647], relating to "sugar above number sixteen Dutch standard in color, and * * * sugar which has gone through a process of refining," *held,* that it is not necessary that, in order to come within the first clause of this provision, sugar should be capable of being used commercially, without refining, as cane sugar; and therefore beet sugar, which is not so capable, is included therein.

[Ed. Note.—Interpretation of commercial and trade terms in tariff laws, see note to Dennison Mfg. Co. v. United States, 18 C. C. A. 545.]

3. STATUTORY CONSTRUCTION—UNAMBIGUOUS LANGUAGE.

Where the language of a statute is incapable of more than one construction and does not lead to an absurd result, a court has no power to vary the meaning by going outside the unambiguous language adopted by the lawmakers.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 266.]

On Application for Review of a Decision of the Board of United States General Appraisers.

William M. Stewart, Jr., for importers.

J. Whitaker Thompson, U. S. Atty., and Jasper Yeates Brinton, Asst. U. S. Atty.

J. B. McPHERSON, District Judge. This petition seeks to review the decision of the Board of General Appraisers, sustaining the collector of the port of Philadelphia in classifying 3,500 bags of beet sugar, imported by the Franklin Sugar Refining Company, as below No. 16 Dutch standard in color, and imposing duty accordingly. These bags were part of five cargoes brought to the port in June and July, 1898, the details being as follows:

1,000 bags out of 40,148 bags, carried by the Strathtay.
1,000 "     "   "  60,000   "        "    "   "  Brazilia.
500   "     "   "  27,500   "        "    "   "  St. George.
500   "     "   "  19,993   "        "    "   "  Sophie Rickmers.
500   "     "   "  36,728   "        "    "   "  Planet Mercury.

The importer's direction to the shippers was that all the sugar must be under No. 16 Dutch standard in color, and the rest of the five cargoes conformed to this direction. The bags in question, however, were reported by the government officials to be above this standard, and, accordingly, the higher rate of duty prescribed by paragraph 209 of the tariff act of July 24, 1897 (Act July 24, 1897, c. 11, § 1, Sched-

ule E, 30 Stat. 168 [U. S. Comp. St. 1901, p. 1647]) was imposed. That paragraph is in part as follows (2 Supp. Rev. St. 662):

"Sugars not above number sixteen Dutch standard in color, * * * testing by the polariscope not above seventy-five degrees, ninety-five one-hundredths of one per cent. per pound, and for every additional degree shown by the polariscopic test, thirty-five one thousandths of one cent per pound additional, and fractions of a degree in proportion; and on sugar above number sixteen Dutch standard in color, and on all sugar which has gone through a process of refining, one cent and ninety-five hundredths of one cent per pound."

This paragraph requires all imported sugar to be first subjected to the test of visual inspection, in order that its color may be compared with the color known as "No. 16 Dutch standard." If the color is lighter, or higher, than this standard—or if the sugar has gone through a process of refining, an alternative which need not now be considered—a duty of one cent and ninety-five hundredths of a cent per pound is to be imposed. If the sugar is of the same color as the standard, or darker or lower, the polariscope test is to be applied and lower rates of duty are to be imposed. The present dispute is, therefore, essentially a dispute of fact. If the bags in question were below the standard color, the importer has been charged too much. If they were above the standard, the collector and the Board were right, and their action should stand.

The opinion of the Board, affirming the classification of the collector, is as follows (Somerville and Hay, Appraisers):

"The question in these cases is whether the sugar under consideration is below or above No. 16 Dutch standard. The sugar was imported in the year 1898. The hearing took place at Philadelphia December 5, 1905.

"The testimony shows that the examination of the samples made at the time the sugar was imported showed that they were above 16 Dutch standard, and the entries were liquidated by the collector upon this basis. The importers introduced samples which had been in their possession between seven and eight years.

"The evidence shows that beet sugar changes its color and becomes darker with the lapse of time. While the evidence shows that these samples of the importers were under 16 Dutch standard, it does not, in our opinion, justify us in authorizing the collector to assess duty based upon the condition of the sugar at the time of the hearing, for the reason, as we have said, that it had undergone a change. It would be a dangerous practice to allow cases to be continued for so long a time, and to follow the practice insisted on by the importers. The protests are all overruled, and the decision of the collector affirmed in each case."

It will be observed, therefore, that in this proceeding the importer starts with the presumption against his contention. Two administrative tribunals, each charged with the duty of determining whether the sugar in question was above or below the standard, have decided against him, and the Board of General Appraisers has so decided after the oral hearing of several witnesses upon one side and the other. The presumption of correctness which thus arises was attacked by the importer in the Circuit Court, and witnesses were called for this purpose, to whom the government replied by taking further testimony in support of the collector's classification. The whole case from the beginning is, therefore, now before the court, and the final result depends upon the question of fact to which reference has already been made. I shall not discuss the evidenc in detail. It has all been

carefully examined and considered in the light of the able argument presented on behalf of the importer; but it leads me to the conclusion that the company has not made out its case, and that the action of the collector and of the board should not be disturbed.

It is unfortunate that, apparently by some misunderstanding, the protest of the importer was not transmitted to the Board until September, 1905. So far as the evidence enables me to judge, the delay was neither intentional nor negligent on the part of the government, but was due to a mistaken belief that the protest raised a different question—one that was already in the courts for decision—and therefore that the present dispute might, without harm to any one concerned, await the final determination of the suit already pending. During the interval, however, the samples taken by the government from the bags in question have disappeared; and, while the importer produced two samples, which were averred to have been taken by its own agent from one of the cargoes, their value in 1906, when the hearing before the Board took place, was much impaired by the lapse of time—which affects the color of sugar—and no samples at all were produced from the other four cargoes. At the argument the importer laid a good deal of stress upon the alleged negligence of the government in delaying the hearing and in failing to preserve the official samples; but, even if the delay had been shown to be the fault of the government, and the failure to preserve the samples had appeared to be due to culpable neglect, this, in itself, would not be decisive in favor of the importer's contention. No doubt, if the government appeared to be at fault in these respects, the court would more readily incline toward the importer's view, and would be more easily persuaded that the presumption of official correctness had been overcome; but where, as here, the testimony as a whole shows with sufficient clearness that the classification was right, a fault in procedure cannot be allowed to destroy the government's right to exact the proper duty.

It was also contended that the purpose of Congress in imposing a duty of one cent and ninety-five hundredths of a cent upon sugars above No. 16 Dutch standard was to tax sugars that had undergone a process of refining, or, at all events, were capable of being used commercially without undergoing that process. It was, therefore, urged upon the court that, since raw beet sugar, such as the importation in question, was so offensive to the senses that it could not be used until it had been refined, the court should so construe the second clause of paragraph 209 as to exclude raw beet sugar altogether, and to confine the phrase "sugar above number 16 Dutch standard in color" to raw sugar that is made from cane. In my opinion, the answer to this argument is that the clause in question is without the slightest ambiguity. It imposes the duty referred to upon all sugar above No. 16 Dutch standard in color, making no exception whatever, and therefore it is beyond the power of the court to limit the clear statutory provision by the process of construction. No doubt it is perfectly proper for a court so to construe an ambiguous provision in a statute as to reach, if possible, the true meaning of the lawmaking body; but where the language is incapable of more than one construction, and does not lead to an absurd result, all the author-

ities agree that a court has no power to vary the meaning by going outside the unambiguous language adopted by the lawmaking power. If Congress had intended to exclude raw beet sugars, they would, I think, have said so. At all events, I am bound to assume that they would have made this exception, if they had desired so to do, and it is therefore my duty, as I conceive it, to carry out the plainly expressed will of the national legislature.

The decision of the Board of General Appraisers is affirmed.